IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANKLYN YEARWOOD AND LEE
YEARWOOD, H/W,

    Plaintiffs,

v.        CIVIL ACTION NO. 09-5945

TURNER CONSTRUCTION COMPANY
*et al.*,

    Defendants.

FILED

FEB 15 2011

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## MEMORANDUM

YOHN, J.                                                                                                                   February 15, 2011

      Franklyn and Lee Yearwood, husband and wife, bring this negligence action against Turner Construction Company ("Turner"), Ruttura & Sons Construction Company, Inc. ("Ruttura"), and Trystate Mechanical, Inc. ("Trystate"). Before me is what is in essence a motion to dismiss for lack of personal jurisdiction or to transfer venue to the Southern District of New York, submitted by Trystate. For the reasons set forth below, I conclude that the court lacks personal jurisdiction over Trystate and that the appropriate remedy is to transfer the entire action to the Southern District of New York.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

      This case arises from an accident that occurred on December 14, 2007, at a construction site at which Franklyn Yearwood was working. At the time, Mr. Yearwood was working as a pipe fitter for Alfa Piping (not a party to this action) at a construction project at Bellevue Hospital in New York City. Defendant Turner, a New York corporation with its principal place

of business in New York City, was the general contractor for the Bellevue Hospital project. Defendants Ruttura and Trystate, also New York corporations with their principal places of business in West Babylon, New York, and Yonkers, New York, respectively, were subcontractors. Plaintiffs allege that Mr. Yearwood was working in a fill approximately twenty feet below ground level when a dump truck unloading dirt and rock on the roadway above him caused a boulder to tumble down a hill and into the fill, striking Mr. Yearwood in the leg and injuring him. Plaintiffs contend that the dump truck was under the control of either Ruttura, Turner, or Trystate. (Compl. ¶¶ 5–12, 15–20.)

The Yearwoods, residents of Cresco, Pennsylvania—Cresco is in Monroe County, which is located in the Middle District of Pennsylvania—filed this action in this district against the three defendants on December 14, 2009. The Yearwoods jointly assert claims of negligence against each defendant (counts I–III), and Mrs. Yearwood individually asserts a claim for loss of consortium against all three defendants (count IV).

Defendants Turner and Ruttura filed an answer on April 23, 2010, asserting several affirmative defenses as well as two cross-claims against Trystate.[1]

Trystate filed its answer to the Yearwoods' complaint on April 26, 2010, also asserting various affirmative defenses—including lack of personal jurisdiction and *forum non*

---

[1] The first cross-claim, asserted by both Turner and Ruttura, asserts that if plaintiffs' allegations are true, Trystate alone is liable to plaintiffs or is liable to Turner and Ruttura for indemnification or contribution. The second cross-claim, asserted only by Turner, asserts that if plaintiffs' allegations are true, plaintiffs' injuries occurred in connection with Trystate's work, and asserts that Trystate is therefore obligated, under the terms of the contract between Turner and Trystate, to indemnify and hold harmless Turner.

2

*conveniens*—as well as a cross-claim against Turner and Ruttura.[2]

Trystate then filed, on August 27, 2010, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or, in the alternative, a motion for summary judgment under Rule 56, asserting that the claims against it should be dismissed for lack of personal jurisdiction or that venue should be transferred to the Southern District of New York under the doctrine of *forum non conveniens*.

## II.   DISCUSSION

Arguing that the court lacks personal jurisdiction over it and that venue is improper, Trystate seeks to dismiss the claims against it or to transfer venue to the Southern District of New York. Although Trystate has styled its motion as a Rule 12(c) motion for judgment on the pleadings, or in the alternative a motion for summary judgment, the motion is more properly construed as a motion to dismiss under Rule 12(b)(2), and I will treat it as such. *Cf. Marten v. Godwin*, 499 F.3d 290, 295 n.2 (3d Cir. 2007) (explaining that "[a] summary judgment order . . . is a ruling on the merits which if affirmed would have preclusive effect," and therefore that "[d]ismissing a claim for lack of personal jurisdiction is more appropriately done by way of Rule 12(b)(2)").[3]

---

[2] In its cross-claim, Trystate asserts that if plaintiffs' allegations are true, Turner and Ruttura are alone liable to Trystate, are jointly and severally liable with Trystate, or are liable to Trystate for indemnification or contribution.

[3] To the extent that Trystate has moved for judgment on the pleadings under Rule 12(c) because it has already filed an answer and it believed that a Rule 12(b)(2) motion would thus be untimely, *see* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses [including lack of personal jurisdiction] must be made before pleading if a responsive pleading is allowed."), I note that Rule 12(c) cannot be used to circumvent issues of timeliness as to waivable defenses such as lack of personal jurisdiction and improper venue, *see* Fed. R. Civ. P. 12(h); 5C Charles Alan

A.   **Personal Jurisdiction**

When a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of "prov[ing], by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). But where, as here, the court has not held an evidentiary hearing on the issue, to survive dismissal "the plaintiff need only establish a prima facie case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Under this standard, the court must accept the plaintiff's allegations as true and resolve any factual disputes in the plaintiff's favor. *See id.* But even under this standard, the plaintiff may not "rely on the bare pleadings alone in order to withstand [dismissal]"; the plaintiff must respond to the motion to dismiss with "actual proofs"—such as "sworn affidavits or other competent evidence"—not "mere allegations." *Time Share*, 735 F.2d at 67 n.9.

A district court may generally assert personal jurisdiction over a defendant to the extent permitted under the law of the state in which the court sits. *See* Fed. R. Civ. P. 4(k). Because this court sits in Pennsylvania, the scope of its personal jurisdiction over a nonresident defendant is

---

Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367, at 221 (3d ed. 2004).
   In any event, courts in this circuit have allowed postanswer motions under Rule 12(b) where, as here, the defense was previously asserted in the answer. *See Bro-Tech Corp. v. Purity Water Co. of San Antonio*, No. 08-371, 2008 WL 1757922 (E.D. Pa. Apr. 16, 2008); *Molnlycke Health Care AB v. Dumex Med. Surgical Prods., Ltd.*, 64 F. Supp. 2d 448, 449 n.1 (E.D. Pa. 1999); *Martin v. Del. Law Sch. of Widener Univ.*, 625 F. Supp. 1288, 1296 n.4 (D. Del. 1985), *aff'd*, 884 F.2d 1384 (3d Cir. 1989) (table); *In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. 398, 413–14 (E.D. Pa. 1981).
   Nor is it necessary, contrary to Trystate's suggestion, to treat the motion as one for summary judgment because Trystate has presented matters outside the pleadings. As the Third Circuit has explained, "[a] Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).

defined by Pennsylvania's long-arm statute, which provides that a Pennsylvania court may exercise jurisdiction over a person "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b).[4] Thus the court may exercise personal jurisdiction over a defendant as long as it does not violate the Constitution.

Due process requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The Supreme Court has explained that these "minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987) (internal quotation marks omitted). And "[t]he nature of these contacts must be such that the defendant should be reasonably able to anticipate being haled into court in the forum state." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).

A court's exercise of personal jurisdiction over a nonresident corporate defendant such as Trystate may be based on one of two theories. If the cause of action arises from or is related to the defendant's contacts with the forum state, the courts of that state have specific jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414

---

[4] This quoted language applies to a court's exercise of specific jurisdiction. *See* Pa. Cons. Stat. § 5322(b), (c). A separate provision governs the exercise of general jurisdiction. *See id.* § 5301. This provision, insofar as it provides for general jurisdiction over a nonresident corporate defendant such as Trystate when its activities within Pennsylvania are "continuous and systematic," *id.* 5301(a)(2)(iii), is also coextensive with the limits of the federal Constitution. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 & n.9 (1984).

5

n.8 (1984). Alternatively, if the defendant maintains "continuous and systematic" contacts with the forum state, the courts of that state have general jurisdiction over the defendant and may entertain suits against the defendant on any claim. *See id.* at 414–16 & n.9.

Here, the Yearwoods contend that the court has both specific jurisdiction and general jurisdiction over Trystate.

### 1. Specific Jurisdiction

"Specific jurisdiction exists if the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). But even where these two requirements have been met, and the defendant is thus said to have "the requisite minimum contacts with the forum," *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009), "a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *id.* (quoting *Burger King*, 471 U.S. at 476).

In this case, Trystate contends that the Yearwoods' claims do not stem from any contact that Trystate may have had with Pennsylvania; all of its relevant activities, Trystate asserts, took place in New York. In support of its motion, Trystate has submitted an affidavit of its president, who has asserted that Trystate entered into a subcontract with Turner; the subcontract between Trystate and Turner—both New York corporations—was negotiated in New York; the subcontract relates only to construction work that was to be performed in New York; and the work actually performed by Trystate under the subcontract was performed in New York. (Aff. of Michael Liberta in Supp. of Mot. to Dismiss ("Liberta Aff.") ¶¶ 5–8.) In addition, Mr. Yearwood

6

alleges that he sustained his injuries while working at the construction site in New York. The Yearwoods allege no conduct by Trystate that is related to their claims and that occurred in Pennsylvania.

Nonetheless, the Yearwoods contend that the requisite "minimum contacts" between Trystate and Pennsylvania can be established because Trystate could have anticipated being sued in Pennsylvania as a result of its business relationship with Turner, a company that, according to the Yearwoods, is "registered with the Pennsylvania Department of State[,] . . . regularly conducts business in Pennsylvania, has a place of business in Philadelphia, and subjects itself to the laws of the Commonwealth of Pennsylvania when it is desirable for its business transactions." (Pls.' Mem. of Law in Supp. of Resp. to Mot. to Dismiss of Def. Trystate Mechanical, Inc. ("Pls.' Br.") at 5; *see also id.* Ex. A.)[5] This argument lacks merit.

In explaining when a party "should reasonably anticipate out-of-state litigation," the Supreme Court has made it clear that there must be some deliberate act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474–75 (internal quotation marks omitted). The mere fact that either the plaintiff or another party with whom the defendant has a relationship may have contacts with the forum state is not sufficient. *See id.* at 474 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). Rather, the defendant's contacts must "proximately result from actions by the defendant *himself* that create a substantial

---

[5] The Yearwoods acknowledge that Turner is incorporated under the laws of New York and has its principal place of business in New York. (Compl. ¶ 5.) Turner has not challenged personal jurisdiction.

7

connection with the forum State." *Id.* at 475 (internal quotation marks omitted).

The only evidence of a business relationship between Trystate and Turner that the Yearwoods have offered is the subcontract between the two parties regarding the New York construction project at issue in this case. "[I]n determining whether the defendant purposefully established minimum contacts within the forum" by entering into a contract with a forum resident, a court cannot look only at the contract but instead must evaluate the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479; *see also Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) ("It is well established . . . that a nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident."). As previously discussed, Trystate asserts that the subcontract was negotiated in New York and relates only to construction work to be performed in New York. The Yearwoods have offered no evidence to otherwise link the contract to Pennsylvania, and I cannot conclude that Trystate purposefully availed itself of the privilege of conducting activities in Pennsylvania merely because it entered into a contract with Turner to perform construction work in New York and Turner happens also to conduct business in Pennsylvania.

In short, the Yearwoods have offered no evidence to suggest that, to the extent that Trystate did have contacts with Pennsylvania because of its contractual relationship with Turner, those contacts with Pennsylvania were anything other than "random," "fortuitous," or "attenuated," or the result of "the unilateral activity" of Turner. *Burger King*, 471 U.S. at 475 (internal quotation marks omitted). There is thus nothing to support a finding of specific

8

jurisdiction here.[6]

## 2.     General Jurisdiction

Even in the absence of specific jurisdiction, this court may exercise personal jurisdiction over Trystate to the extent that the Yearwoods can establish general jurisdiction. To establish general jurisdiction, the Yearwoods must demonstrate that Trystate's contacts with the forum state are "continuous and substantial." *Provident Nat'l Bank*, 819 F.2d at 437. This test is rigorous and is "not an easy one to meet," *Surgical Laser Techs., Inc. v. C.R. Bard, Inc.*, 921 F. Supp. 281, 284 (E.D. Pa. 1996); indeed, "Pennsylvania decisions elaborating [this] standard indicate a very high threshold of business activity," *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 890 n.2 (3d Cir. 1981) (Gibbons, J., dissenting).

In his affidavit, Trystate's president has asserted that "Trystate does not have a place of business or address for service of process located in Pennsylvania[;] . . . does not conduct business in Pennsylvania[;] . . . does not solicit business in Pennsylvania[;] . . . does not have employees, agents, or representatives in Pennsylvania[;] . . . does not file Pennsylvania Tax Returns[;] . . . does not own property in Pennsylvania[; and] . . . does not have assets in Pennsylvania." (Liberta Aff. ¶¶ 9–15.) The Yearwoods offer no evidence that contradicts Trystate's averments or that otherwise suggests the "continuous and systematic" contacts between Trystate and Pennsylvania necessary to establish general jurisdiction.

The Yearwoods do, however, request jurisdictional discovery to uncover evidence that

---

[6] Because the Yearwoods have not even made a prima facie showing of the required minimum contacts to establish specific jurisdiction over Trystate, I do not consider whether the exercise of specific jurisdiction over Trystate "would comport with fair play and substantial justice." *D'Jamoos*, 566 F.3d at 106 (internal quotation marks omitted).

would support their claim of personal jurisdiction.[7] The record does not indicate that they have conducted any such discovery as to Trystate since the filing of their complaint on December 14, 2009. As a general rule, although the plaintiff bears the burden of establishing personal jurisdiction, a court should assist the plaintiff by allowing jurisdictional discovery unless the claim of jurisdiction is "clearly frivolous." *Metcalfe*, 566 F.3d at 336. "If [the] plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the defendant] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal quotation marks and citation omitted). The Third Circuit has, however, "cautioned against allowing jurisdictional discovery to serve as 'a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery.'" *Lasala v. Marfin Popular Bank Pub. Co.*, No. 10-1712, 2011 WL 49315, at *4 (3d Cir. Jan. 7, 2011) (not precedential) (quoting *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010)).

Here, the Yearwoods assert that "[b]ecause Trystate has a business relationship with Turner, a company that regularly conducts business in Pennsylvania, [they] believe and therefore aver that [Trystate] also conducted business in Pennsylvania." (Pls.' Br. at 5.) They contend that "[d]iscovery may reveal that Trystate purposefully directed its activities at Pennsylvania residents

---

[7] Although the Yearwoods have not formally moved for jurisdictional discovery, in their brief opposing Trystate's motion they have asserted the need for jurisdictional discovery, which I will construe as a request for such discovery. *See Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283 (3d Cir. 1994) (asserting that although plaintiffs had failed to make formal discovery requests, they were entitled to conduct jurisdictional discovery because they had adequately preserved their position that discovery was required in their brief opposing defendant's motion to dismiss).

through its business relationship with Turner" and "will reveal how much profit Trystate earns from Pennsylvania residents." (*Id.* at 6.)

The Yearwoods, however, have not offered any evidence of a business relationship between Turner and Trystate beyond the contract that the two parties entered into regarding the New York construction project at issue in this case. Although the Third Circuit has "found jurisdictional discovery particularly appropriate where the defendant is a corporation," *Metcalfe*, 566 F.3d at 336, the Yearwoods have failed to present factual allegations that suggest with "reasonable particularity" the requisite contacts between Trystate and Pennsylvania. The Yearwoods' contention that Trystate conducts business in Pennsylvania because it has entered into a contract regarding construction work in New York with a New York company that happens also to do business in Pennsylvania falls short of the kind of factual allegations that courts have generally required before granting jurisdictional discovery. Indeed, it is the sort of "unsupported allegation that the defendant 'transacts business' in an area" that other courts have found to be "clearly frivolous." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997). I will thus deny the Yearwoods' belated request for jurisdictional discovery.

\* \* \*

The Yearwoods have not offered any evidence to support a finding of either specific jurisdiction or general jurisdiction over Trystate. They have thus failed to make the prima facie showing necessary to withstand Trystate's motion. For the reasons set forth below, however, instead of dismissing the claims against Trystate, I will transfer the entire action to the Southern District of New York.

11

**B.     Venue**

Trystate also contends that venue in this district is improper and that the action must be transferred to the Southern District of New York under the doctrine of *forum non conveniens*.[8]

**1.     Is Venue Proper in this District?**

Whereas the plaintiff has the burden of establishing personal jurisdiction, the defendant bears the burden of proving that venue is improper. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724–25 (3d Cir. 1982). In this case, the questions of venue and personal jurisdiction are intertwined, and whether venue is proper as to Trystate depends on whether the court may exercise personal jurisdiction over Trystate, as well as the other two defendants, Turner and Ruttura.

Where, as here, subject-matter jurisdiction is based on diversity of citizenship, an action may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to

---

[8] Trystate has apparently conflated the common-law doctrine of *forum non conveniens* with 28 U.S.C. § 1406. The doctrine of *forum non conveniens* traditionally allowed a court to dismiss an action brought in an inconvenient forum even though the court had jurisdiction and venue was proper. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994). But as a result of the enactment of 28 U.S.C. § 1404(a), which provides for transfer when venue is proper but inconvenient, "the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad." *Id.* at 449 n.2. Section 1406, on the other hand, provides for transfer or dismissal when venue is improper, rather than merely inconvenient. Because Trystate is arguing that venue in this district is improper, I will construe its motion to transfer venue to the Southern District of New York as a motion to transfer under section 1406. Similarly, because in its answer Trystate denied that venue is proper and asserted that the action should be transferred (Trystate's Answer ¶ 2 and 9th affirmative defense), I will construe its affirmative defense of *forum non conveniens* as an objection that venue is improper, and thus conclude that Trystate did not waive any objection to improper venue.

12

personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

The Yearwoods contend that venue is proper under section 1391(a)(3) because under that provision an action "may be brought in a judicial district in which any defendant is subject to personal jurisdiction" and defendant Turner is subject to personal jurisdiction in this district. (Pls.' Br. at 7.) The Yearwoods, however, have misconstrued this provision. It applies only "if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3). That is, "venue may be based on that subsection only if venue cannot be established in another district pursuant to any other venue provision." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 434 (2d Cir. 2005). But here, because Mr. Yearwood was injured at a construction site in New York City—and thus a substantial part of the events giving rise to the Yearwoods' claims occurred in New York City—venue could have been established in the Southern District of New York under section 1391(a)(2).[9] Thus, section 1391(a)(3) cannot provide a basis for finding venue proper in this district.

Nor is venue proper in this district under section 1391(a)(2). The Yearwoods have not alleged that any of the events giving rise to their claims occurred in this district. Although the Yearwoods note that Mr. Yearwood received medical care in this district, that alone is not sufficient to render venue proper in this district. *See Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 736 (8th Cir. 1997) (asserting that plaintiff injured in car accident in South Dakota

---

[9] I note that three of the five counties of New York City are in the Eastern District of New York. The construction site where Mr. Yearwood was injured, however, is in New York County (Manhattan) and thus within the Southern District of New York.

13

could not lay venue in Wisconsin, where she received her medical treatment).

Finally, section 1391(a)(1) does not provide a basis for laying venue in this distrct. That subsection provides that an action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(a)(1). For venue purposes, a corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).[10] Because Trystate is not subject to personal jurisdiction in Pennsylvania, venue is improper here.[11]

There is thus no basis for finding venue proper here. But venue is improper only as to Trystate, because neither Turner nor Ruttura has objected to venue in this district and each has thus waived any objection that venue is improper.

---

[10] The venue statute further provides that where, as here, a state has more than one judicial district, a corporate defendant subject to personal jurisdiction in that state
> shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c).

[11] Neither Turner nor Ruttura has objected to this court's exercise of personal jurisdiction over them. Although some courts have concluded that, for purposes of determining whether venue is proper, a defendant who has not objected to personal jurisdiction may be deemed a resident of the forum state under 28 U.S.C. § 1391(c), *see, e.g., Williams v. Terex Corp.*, No. 01-3770, 2001 WL 1486228 (E.D. Pa. Nov. 20, 2001), other courts have held that a court must make an independent inquiry into whether personal jurisdiction existed when the plaintiff commenced the action, regardless of whether the defendant has waived any challenges to jurisdiction, *see, e.g., DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 19 (D.D.C. 2002); *cf. Hoffman v. Blaski*, 363 U.S. 335, 342–44 (1960) (holding that for purposes of determining whether transfer under 28 U.S.C § 1404(a) is appropriate, the determination of whether the action "might have been brought" in a particular district must be made as of the time the action was commenced, without regard to a defendant's subsequent consent or waiver). I need not resolve this apparent conflict now, however. In either case it is clear that venue in this district is improper if Trystate is not subject to personal jurisdiction here.

14

### 2.     Transfer or Dismissal to Cure Defect in Venue

Where venue is improper, 28 U.S.C. § 1406(a) provides that "[t]he district court . . . shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." A court may transfer venue in the interest of justice even when it lacks personal jurisdiction. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465–67 (1962).

The Third Circuit has held that where venue is proper for some defendants but not for another and dismissal is inappropriate, a district court may either transfer the entire case to another district that is proper for all defendants or sever the claims, retaining jurisdiction over the defendants for whom venue is proper and transferring the case as to the other defendant to an appropriate district. *See Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994). The Third Circuit has further asserted that a court "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Id.* (internal quotation marks omitted). In such a case, the Third Circuit has asserted, "severance would not ordinarily be consistent with the sound exercise of discretion." *Id.*

Here, the Yearwoods have asserted the same claims of negligence and loss of consortium against all three defendants. Because these claims are intertwined and involve the same set of factual issues, and because the conduct of each defendant is relevant to the ultimate determination of liability for Mr. Yearwood's injuries, severing the claims and transferring the case against Trystate would not be appropriate here. Indeed, severance would place Turner and Ruttura, on the one hand, and Trystate, on the other hand, "in the position of being able to defend by asserting the absent party's negligence," which would "hamper[] rather than further []the

administration of justice." *Sunbelt*, 5 F.3d at 34.

I must thus either dismiss the claims against Trystate or transfer the entire action to another district that is proper as to all three defendants. As a preliminary matter, I note that this case could have originally been brought in the Southern District of New York. Because the defendants are all New York corporations, they are subject to personal jurisdiction in New York. *See* N.Y. C.P.L.R. § 301 & cmt. C301:6 (McKinney's 2010). And as discussed above, I have already determined that venue would have been proper in the Southern District of New York under section 1391(a)(2) because Mr. Yearwood was injured at a construction site in that district and thus a substantial part of the events giving rise to the Yearwoods' claims occurred there. Further, the interests of justice counsel against dismissing the claims against Trystate and in favor of transferring the entire action to the Southern District of New York.

Courts have generally found a transfer to be in the interest of justice where a plaintiff's cause of action would be barred by the applicable statute of limitations if the court dismissed the action and required the plaintiff to refile the action in an appropriate forum. *See Goldlawr*, 369 U.S. at 466. Here, although the parties have not addressed the issue, it appears that under New York law, the applicable statute of limitations for the Yearwoods' negligence claims is three years. *See* N.Y. C.P.L.R. § 214.[12] Because the accident in which Mr. Yearwood sustained his injuries occurred on December 14, 2007—more than three years ago—the Yearwoods' claims against Trystate would likely be barred if those claims were dismissed and the Yearwoods were

---

[12] Under Pennsylvania law, the applicable statute of limitations is two years. *See* 42 Pa. Cons. Stat. § 5524; *see also id.* § 5521(b) ("The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim.").

required to refile their claims in the Southern District of New York.

The interests of justice also counsel against dismissal here given that Turner and Ruttura seek indemnification or contribution in their cross-claims against Trystate. *Cf. Kellum v. U.S. Lines, Inc.*, 365 F. Supp. 1026, 1030 (E.D. Pa. 1973) (asserting that the ability to implead a third-party defendant is a factor favoring transfer "in the interest of justice" under 28 U.S.C. § 1404(a)).[13] Transferring the entire action would allow both the Yearwoods' claims against the defendants and the defendants' cross-claims to be litigated in a single case. This would spare Turner and Ruttura the potential expense of a separate lawsuit seeking indemnification or contribution from Trystate to the extent that either or both were found liable in the Yearwoods' action against them. In addition, given that Trystate would not be bound by the judgment in the Yearwoods' action against Turner and Ruttura if Trystate were dismissed, transferring the action would protect Turner and Ruttura from the possibility of inconsistent judgments in the two suits.

Because this action could have been brought in the Southern District of New York, and because I conclude that the interests of justice require transfer in this case, I will transfer the entire action to that district.

### III.  CONCLUSION

The Yearwoods have not made a prima facie showing that this court may exercise personal jurisdiction over Trystate. And because the court lacks personal jurisdiction, venue is

---

[13] The impleader rule allows a "defending party . . . [to] serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Often, the basis for impleading a third party is "an assertion that the [third party] owes the defending party a duty of indemnity or contribution." 3 *Moore's Federal Practice* § 14.03[1], at 14-10 (3d ed. 2010).

also improper as to Trystate. Rather than granting Trystate's motion to dismiss the claims against it, however, I will transfer the action to the Southern District of New York. Although the other two defendants have not objected to personal jurisdiction or venue, I conclude that the interests of justice would best be served by transferring the entire action to a district that is proper for all three defendants. Because this action could have originally been brought in the Southern District of New York, I will transfer the action to that district.

    An appropriate order accompanies this memorandum.